Janessa Lea LAMBERT, Appellant,

v.

Donald LAMBERT, Appellee.

NO. 2015–CA–000584–ME

Court of Appeals of Kentucky.

RENDERED: NOVEMBER 13, 2015; 10:00 A.M.

Brief for Appellant: Leroy A. Gilbert, Jr., Williamsburg, Kentucky.

Brief for Appellee: Amanda Hill, Corbin, Kentucky.

BEFORE: COMBS, D. LAMBERT, AND VANMETER, JUDGES.

## OPINION

VANMETER, JUDGE:

Janessa Lambert appeals from the Whitley Circuit Court's order denying her motion to alter, amend or vacate the court's findings of fact, conclusions of law and decree of custody entered in favor of her father, Donald Lambert. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Donald is the maternal grandfather of Janessa's children, M.R. and A.R. On May 31, 2013, Donald and his longtime paramour, Marcy Uhutch, met Janessa in Un-iontown, Pennsylvania, intending to bring the children to Donald's hometown in Whitley County for a visit. Janessa was living in Pennsylvania at the time. When Donald and Marcy met Janessa for the exchange, they found the children to be in poor condition. The children, then aged 3 and 4, were still wearing diapers and drinking from bottles. They were unclean, behind on their vaccinations and suffered extensive dental issues. The children were sent with garbage bags containing their clothes, most of which did not fit or were out of season. Donald testified that it appeared as if the children and their mother were living out of the van that Janessa was in when they met for the exchange.

Donald returned with the children to Whitley County and as time passed, the children's mother never came to retrieve them. She provided no monetary support for them and seldom called. In August, in an effort to get the children the dental work and medical attention they needed, Donald filed dependency, neglect and abuse petitions in the Whitley District Court. Donald was awarded temporary custody of the children by the Whitley District Court on September 26, 2013. The court referred the matter to the Kentucky Department of Community Based Services ("DCBS"), who then referred the matter to Pennsylvania Child Protective Services since Janessa is a Pennsylvania resident.[1] Kentucky DCBS assigned Janessa a social worker and Janessa agreed to a case plan which included cooperating with the Pennsylvania social workers regarding the Interstate Compact for the Placement of Children ("ICPC").[2]

1. At some point, Janessa filed a petition for custody in a Pennsylvania court. To this court's knowledge, that action is still pending.

2. Janessa did not cooperate with the Pennsylvania social workers and a home evaluation was eventually denied. The ICPC report in the DCBS's file indicated that twelve people

On February 4, 2014, Donald filed a petition for child custody with the Whitley Circuit Court. An evidentiary hearing was initially scheduled for September 4, 2014, but the case was continued in order to amend the child custody petition to include the children's father, Aurielano Ragoitia Villa Gomez, as a party to the case. Gomez was served through the Secretary of State in November 2014, but never entered an appearance or attended any of the hearings. Donald and Marcy testified that Gomez sometimes called the children and spoke of visiting, but he never actually visited and had very little contact with the children.

Donald and Marcy testified about the deplorable condition of the children when they were picked up. They further indicated that multiple incidents of domestic violence had occurred between Janessa and her most recent paramour. Janessa's paramour had also used racial slurs against the children, who are partially of Hispanic descent. Testimony alleged that Janessa's home had no plumbing. The Kentucky social worker assigned to the case testified about her observations of Janessa during supervised visits with the children, noting that Janessa spent most of the time playing on her phone while the children's maternal grandmother interacted with and cared for the children. She further testified that Janessa made no attempts to contact her while the case was ongoing.

The final hearing in this matter was held on January 8, 2015. Near the end of Donald's case-in-chief, the presiding judge noted on the record that Janessa appeared to be under the influence. The court made a call to the parole and probation office, which administered a drug screen. The police were also called to administer a sobriety test. Janessa tested positive for cocaine. The court ordered that a referral be made to the Pennsylvania Child Protection Services since Janessa's two other younger children, not the subject of this custody dispute, were still in her legal custody. Janessa requested a continuance, but her motion was denied. The hearing concluded with the court granting custody to Donald. Janessa made no objection to this order, despite the fact that she was not permitted to put on evidence or present her case. The court ultimately entered findings of fact, conclusions of law, and a custody decree which included an order for child support. Janessa filed a motion to alter, amend or vacate the court's custody decree. The court denied that motion, and from that order, Janessa appeals.

On appeal, Janessa makes four arguments. First, she claims that the trial court did not have jurisdiction to enter a custody decree. Next, she claims the trial court erred by granting Donald custody at the January 8, 2015 hearing without permitting her to present her case. Third, she alleges that the trial court considered inadmissible hearsay evidence when it allowed the Kentucky social worker to testify regarding information she gained from Janessa's assigned Pennsylvania social worker and when it took judicial notice of the district court record from the dependency, abuse and neglect action. Lastly, Janessa claims that the trial court erred by ordering her to pay child support without evidence of income.[3]

---

were residing in the home in which Janessa resided in Pennsylvania.

**3.** Donald notes in his brief that Janessa's appellant's brief was not timely filed. Kentucky Rules of Civil Procedure (CR) 76.12(8)(b) pro-

vides, "[i]f the appellant's brief has not been filed within the time allowed, the appeal may be dismissed." We decline to impose that penalty in this instance and will address the

## II. STANDARD OF REVIEW

CR 59.05 states: "A motion to alter or amend a judgment, or to vacate a judgment and enter a new one, shall be served not later than 10 days after entry of the final judgment." In general, a trial court has unlimited power to alter, amend, or vacate its judgments. *Gullion v. Gullion*, 163 S.W.3d 888, 891–92 (Ky. 2005). The Supreme Court of Kentucky has limited the grounds for relief under CR 59.05 to those established by its federal counterpart, Federal Rule of Civil Procedure 59(e). *Id.* at 893.

> There are four basic grounds upon which a Rule 59(e) motion may be granted. First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice. Serious misconduct of counsel may justify relief under this theory. Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.

*Id.* (internal footnote omitted). A trial court's ruling on a CR 59.05 motion is reviewed under an abuse of discretion standard. *Bowling v. Ky. Dep't of Corr.*, 301 S.W.3d 478, 483 (Ky. 2009).

## III. ISSUES ON APPEAL

### A. JURISDICTION AND STANDING

First, Janessa argues that the trial court did not have jurisdiction to hear Donald's custody petition because Donald failed to prove either that Kentucky is the children's home state or that he is a *de facto* custodian of the children. KRS[4]

403.822, governing initial child custody jurisdiction, instructs:

> (1) Except as otherwise provided in KRS 403.828, a court of this state shall have jurisdiction to make an initial child custody determination only if:
>
> (a) **This state is the home state of the child on the date of the commencement of the proceeding,** or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]

(emphasis added). KRS 403.800(7) defines "home state" as having two prongs: first, a child's home state must be "the state in which a child lived ... for at least six (6) consecutive months immediately before the commencement of a child custody proceeding[;]" second, the child must have been living "with a parent or a person acting as a parent[.]" Donald initiated the custody proceedings on February 4, 2014, at which point the children had been living with him in Whitley County since May 31, 2013. So, the children had undoubtedly been living in Kentucky for over six consecutive months prior to filing of the custody petition, and the first requirement of "home state" status has been fulfilled.

Next, we must address whether Donald qualifies as a "person acting as a parent." With respect to standing to bring an action for initial custody of a child, Janessa's claim that Donald is not a *de facto* custodian is irrelevant. Prior to adoption of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), KRS 403.800 *et seq.*, standing to bring a custody action was limited to "a

substantive arguments raised in Janessa's brief.

4. Kentucky Revised Statutes.

parent, a *de facto* custodian of the child, or a person other than a parent only if the child is not in the physical custody of one of the parents." *B.F. v. T.D.*, 194 S.W.3d 310 (Ky. 2006). However, "[t]he current statute confers standing on the child's parent(s) or 'a person acting as a parent.'" *Mullins v. Picklesimer*, 317 S.W.3d 569, 574–75 (Ky. 2010). Achieving *de facto* custodian status is no longer necessary to bring an action for child custody; under the UCCJEA, one must only qualify as a "person acting as a parent" in order to have standing to bring such an action.

KRS 403.800(13) states:

"Person acting as a parent" means a person, other than a parent, who:

(a) Has physical custody of the child or has had physical custody for a period of six (6) consecutive months, including any temporary absence, within one (1) year immediately before the commencement of a child custody proceeding; and

(b) Has been awarded legal custody by a court or claims a right to legal custody under the law of this state[.]

Since Donald had physical custody of the children for over eight months immediately preceding commencement of the child custody action and was awarded temporary custody as the result of the dependency, abuse and neglect proceedings in the district court, he qualifies as a "person acting as a parent" under KRS 403.800(13). The second prong of the "home state" definition is thus met, and Kentucky qualifies as the children's home state. We therefore find that Donald had standing to bring a child custody action and the trial court properly exercised jurisdiction over this case.

### B. CUSTODY RULING

■ Next, Janessa claims that the trial court erred by entering a custody ruling without allowing her to put on evidence, thus denying her a meaningful opportunity to be heard. Janessa cites *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), claiming that this violated her due process rights. However, our review of the record reflects that after the court denied Janessa's request for a continuance following her positive drug test, Janessa made no attempt to offer any proof or evidence. The children's guardian ad litem then moved the court to grant Donald's requested relief; Janessa made no objection to that motion. Janessa also made no objection to the drug screen or the court's notice of the positive result.[5] "This court has held time and time again that, in order to be considered on appeal, a specific objection must have been raised in the trial court[.]" *Ellison v. R & B Contracting, Inc.*, 32 S.W.3d 66, 73 (Ky. 2000). Since Janessa did not object to the guardian ad litem's motion, other than moving for a continuance, nor did she object to the entry of a custody decree prior to her opportunity to present her case, we may not consider this alleged error on appeal.

■ Furthermore, we find that Donald's evidence met the standard for an exception to the parent's superior right to custody, and thus a directed verdict was appropriate. In *Mullins*, the Supreme Court held that the standard for a nonparent who does not qualify as a de facto custodian pursuing custody has not been superseded by adoption of the UCCJEA. 317 S.W.3d at 578.

[T]he non-parent pursuing custody must prove either of the following two exceptions to a parent's superior right or entitlement to custody: (1) that the parent

---

**5.** In fact, Janessa's counsel agreed to the request for a drug screen.

is shown by clear and convincing evidence to be an unfit custodian, or (2) that the parent has waived his or her superior right to custody by clear and convincing evidence.

*Id.* at 578 (*citing Moore v. Asente,* 110 S.W.3d 336, 359 (Ky. 2003)). "Under the first exception, the nonparent must first show by clear and convincing evidence that the parent has engaged in conduct similar to activity that could result in the termination of parental rights by the state. Only after making such a threshold showing would the court determine custody in accordance with the child's best interest." *Moore,* 110 S.W.3d at 360.

The evidence in the record clearly shows that Janessa engaged in conduct "similar to activity that could result in the termination of parental rights by the state." The condition of the children when Donald picked them up was extremely poor, and she not only failed to provide the children with any financial support while they were living with their grandfather, but also failed to engage with the children during her supervised visits. Janessa's intoxication at the court hearing and positive drug screen further support the court's conclusion. The children's father, Gomez, also engaged in conduct that could render his parental rights terminated since he failed to participate in the case in any capacity and provides the children with no caregiving or financial support. Following that determination, the circuit court clearly took into consideration the best interests of the children in making its custody decree, relying on the guardian ad litem's recommendation. Thus, the court's grant of custody to Donald was appropriate.

## C. HEARSAY EVIDENCE

▮ Thirdly, Janessa claims the trial court erred by considering hearsay evi-

dence from Pennsylvania Child Protective Services and the Whitley District Court. The Pennsylvania records were obtained by the Kentucky social worker through cooperation pursuant to the ICPC and the case plan established with Janessa. The Kentucky social worker testified, based on information provided to her by the Pennsylvania social worker, that Janessa had not cooperated with Pennsylvania Child Protective Services. This was likely inadmissible hearsay evidence, but we find this to be harmless error given the other evidence admitted in the case. CR 61.01 states:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Here, admission of this hearsay evidence is not grounds for disturbing the court's order. Even without the social worker's file from Pennsylvania, the evidence was clear and convincing that Janessa is an unfit custodian.

▮ With regard to the circuit court taking judicial notice of the district court's dependency, neglect and abuse action record, judicial notice of such an action is appropriate under KRE [6] 201. KRE 201(b) indicates:

---

**6.** Kentucky Rules of Evidence.

(b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either:

(1) Generally known within the county from which the jurors are drawn, or, in a nonjury matter, the county in which the venue of the action is fixed; or

(2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

The records of a court are not subject to reasonable dispute. They are also admissible under the "public records" exception to the hearsay rule. KRE 803(8). Thus, this argument has no merit.

## D. VISITATION AND CHILD SUPPORT

Lastly, Janessa maintains that the circuit court erred by failing to provide her with fair visitation time and by ordering her to pay child support without making findings as to her income. Janessa has provided no evidence nor has she cited any law suggesting that the circuit court's award of once monthly Saturday or Sunday supervised visits is inappropriate. We therefore decline to reverse that order.

With respect to child support, Janessa alleges that the court imputed minimum wage to her without gathering any evidence on the subject and despite the fact that she is unemployed and the sole caregiver for her two other children, who were born after A.H. and M.H. came to live with their grandfather. The circuit court only made one finding concerning child support before ordering that child support in the statutory amount of $298.50 be paid monthly by each parent:

(23) As the children have state-issued medical cards, the Petitioner [Donald]

must collect child support from the children's parents. Child support shall be calculated by imputing minimum wage to the parties. A child support worksheet is attached hereto and labeled as Exhibit "A."

While "[a] reviewing court should defer to the lower court's discretion in child support matters whenever possible[,] ... a trial court's discretion is not unlimited. The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Downing v. Downing,* 45 S.W.3d 449, 454 (Ky.App. 2001).

Child support determinations are based on the combined gross income of both parents. In calculating child support obligations, income may only be imputed to parents when the parent is voluntarily unemployed or underemployed, and such a calculation is to be based upon the parent's potential income. KRS 403.212(2)(d); *Howard v. Howard,* 336 S.W.3d 433, 439 (Ky. 2011).

If a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, except that **a determination of potential income shall not be made for a parent who** is physically or mentally incapacitated or **is caring for a very young child, age three (3) or younger,** for whom the parents owe a joint legal responsibility."

KRS 403.212(2)(d) (emphasis added). Janessa is currently caring for her two youngest children, both of whom are under the age of three. We therefore find that the circuit court abused its discretion by imputing minimum wage to Janessa.[7] On

---

7. Since Gomez has not participated in this appeal or the underlying proceedings, we are

unable to address his ordered child support.

remand, the circuit court must note Janessa's income as zero and order the minimum $60 monthly child support obligation.

## IV. CONCLUSION

The order of the Whitley Circuit Court is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

ALL CONCUR.