RENDERED:  SEPTEMBER 11, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-001236-ME

MICHAEL SWEIKATA                                        APPELLANT


APPEAL FROM BOONE FAMILY COURT
v.         HONORABLE JENNIFER R. DUSING, JUDGE
ACTION NO. 18-CI-00255


JOSHUA JUDD                                                APPELLEE

OPINION AND ORDER
DISMISSING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND K. THOMPSON, JUDGES.

ACREE, JUDGE:  Michael Sweikata appeals the Boone Family Court's order

denying him visitation with his step-child because he lacks standing.  Because this

Court lacks subject matter jurisdiction, we dismiss the appeal.

As the procedural history shows and as set forth below, Sweikata

brought this appeal from an order that was void *ab initio.*  The family court lost

jurisdiction of the case many months before entering the order.

## BACKGROUND, PROCEDURE, AND ANALYSIS

When Sweikata married Joshua Judd's ex-wife Ashley in 2009, he became the step-father to Judd's and Ashley's nearly four-year-old biological child. Judd and Ashley shared custody of the child and exercised near equal parenting time. No one disputes that Sweikata was a positive influence in the life of the child, and at times paid for food, school expenses, and medical expenses when Ashley was exercising her parenting time. This situation remained relatively constant until Ashley's untimely death on November 19, 2017.

On February 23, 2018, Sweikata named Judd as the respondent in his "Verified Petition to Establish Custody." He was seeking joint custody with Judd of Judd's biological child.[1] He did not allege Judd was unfit, and he did not allege Judd had waived his superior custody rights to any degree whatsoever. Rather, he claimed he "is the *de facto* custodian of the minor child pursuant to KRS[2] 403.270(1)(a)." He did not pursue visitation as an alternative to custody, but sought appropriate timesharing only in conjunction with a prospective award of joint custody.[3]

---

[1] After Judd and Ashley's divorce, Judd also remarried. Sweikata did not name Judd's new wife as a respondent.

[2] Kentucky Revised Statutes.

[3] "The term 'visitation' is often used interchangeably with 'timesharing.'" *Layman v. Bohanon*, 599 S.W.3d 423, 429 (Ky. 2020). In so noting, the Supreme Court cited *Anderson v. Johnson*, where the Court clarified as follows:

Judd opposed Sweikata's claim by filing an answer within a few days. A few days after that, Judd filed a motion, with his supporting affidavit, to dismiss Sweikata's petition because "the Petitioner lacks standing and is not a proper party to this action[;] therefore[,] after a simple review of the pleadings in this case, with or without a hearing, this case should be dismissed . . . ."

Four weeks from the date Sweikata filed his petition, the family court heard the parties on Judd's motion to dismiss. Sweikata's attorney argued a different basis for standing than that claimed in his petition for *de facto* custodian status. Citing *Lambert v. Lambert*, he argued, "Achieving *de facto* custodian status is no longer necessary to bring an action for child custody; under the UCCJEA,[4] one must only qualify as a 'person acting as a parent' in order to have standing to bring such an action." 475 S.W.3d 646, 651 (Ky. App. 2015). The family court concluded testimony was necessary.

---

We refer to "timesharing" throughout most of this opinion, because that is the type of arrangement at issue. But this discussion applies equally to visitation, which is functionally the same thing, though it applies to sole-custody situations and timesharing applies to joint-custody situations. *See Pennington v. Marcum,* 266 S.W.3d 759, 765 (Ky. 2008) ("The weekend parent does not have 'visitation,' a sole-custody term which is frequently misused in this context, but rather has timesharing,' as he or she is also a legal custodian. However, in practice, the terms visitation and timesharing are used interchangeably.").

350 S.W.3d 453, 455 n.1 (Ky. 2011).

[4] Uniform Child Custody Jurisdiction and Enforcement Act.

The record clearly shows that, to the extent Sweikata was parenting the child, he was doing so alongside the child's mother and, therefore, could not qualify as a *de facto* custodian. *Mullins v. Picklesimer*, 317 S.W.3d 569, 574 (Ky. 2010) ("parenting the child alongside the natural parent does not meet the *de facto* custodian standard").

His alternative argument that he qualified as a "person acting as a parent" was equally unavailing. Citing the very case upon which Sweikata relied, the family court noted he lacked proof of one of the requirements of that status – that he "was awarded temporary custody as the result of the dependency, abuse and neglect proceedings in the district court . . . ." *Lambert*, 475 S.W.3d at 651. As the family court indicated, Sweikata was required, at least, to present clear and convincing evidence that temporary custody could have been placed with someone other than Judd by showing he was unfit or had waived his superior parental rights. Sweikata failed to do that.

A few days after the hearing, the family court entered findings of fact and conclusions of law. Citing *Mullins*, the family court found as follows:

- "A nonparent sharing parenting responsibilities alongside a natural parent cannot, as a matter of law, meet the definition of a *de facto* custodian. . . . Thus, the Petitioner does not meet the definition of a *de facto* custodian and

does not have standing to seek custody of the minor child under this legal standard."

- "A person may also have standing to seek custody of [a] child if that non-parent meets the requirements of KRS 403.800(13), which gives standing to a 'person acting as a parent.'"

- "When a non-parent seeks custody of a child and the non-parent does not meet the requirements for a *de facto* custodian and is thus seeking standing to pursue custody under KRS 403.800(13), the non-parent must prove by clear and convincing evidence either that the parent is unfit or that the parent has waived his superior right to custody."

- "The Petitioner did not allege either that the Respondent is an unfit parent or that the Respondent waived his right to custody of the minor child."

- "Thus, the Petitioner cannot allege that he is a 'person acting as a parent' and thus cannot claim standing to pursue custody of the minor child."

On the same date, March 26, 2018, the family court entered an order that Sweikata lacked standing to pursue custody. Although denominated an order, it was a final and appealable judgment pursuant to CR[5] 54.01. In its entirety, that rule says:

> A judgment is a written order of a court adjudicating a claim or claims in an action or proceeding. A final or

---

[5] Kentucky Rules of Civil Procedure.

appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding, or a judgment made final under Rule 54.02. Where the context requires, the term "judgment" as used in these rules shall be construed "final judgment" or "final order."

The Supreme Court has interpreted CR 54.01 as meaning "[a]n order is final . . . if the order adjudicated all of the claims of all of the parties before the court at the time the order was entered." *Security Federal Sav. & Loan Ass'n of Mayfield v. Nesler*, 697 S.W.2d 136, 138 (Ky. 1985) (citing *Cerwin v. Taub*, 552 S.W.2d 675 (Ky. App. 1977)). When there is one claim – here, a claim for custody – against a single defendant/respondent – here, Judd – resolved by a ruling that the party pressing the claim – here, Sweikata – lacks standing to do so, there is nothing left to adjudicate. The result is a "final order adjudicating all the rights of all the parties in [the] action or proceeding . . . ." CR 54.01.

The family court added language from CR 54.02 removing any doubt about the nature of the order, stating, "This is a final and appealable order, there being no just cause for delay." However, our Supreme Court has noted that in such circumstances, this additional verbiage is unnecessary, stating:

> The magic words required by CR 54.02 for finality do not apply because the result of the [March 26, 2018] order left nothing to adjudicate regarding the rights and priorities of the parties.
>
> If the [March 26, 2018] order was incorrect or the priorities were misapplied, then a motion under CR 59.05 was the proper remedy. CR 59.05 provides that a court

-6-

cannot change on motion or *sua sponte* a judgment it has entered after ten days. A CR 59.05 motion was not filed in this case. Therefore[,] the [March 26, 2018] order stands as final.

*Nesler*, 697 S.W.2d at 138-39 (bracketed date reflects the order in the instant case rather than the "May 17" date in *Nesler*).

The March 26, 2018 order was final and appealable. Ten days later, on April 5, 2018, the family court lost jurisdiction of the case. When Sweikata failed to file a notice of appeal before April 25, 2018, he forfeited his right to appeal. CR 73.02(1)(a) ("The notice of appeal shall be filed within 30 days after the date of notation of service of the judgment or order under Rule 77.04(2).").

Notwithstanding this finality and loss of jurisdiction, on February 18, 2019, some eleven months later, Sweikata's new attorney filed an "Entry of Appearance" in this same case. Then, on February 27, 2018, the new attorney filed a "Verified Motion for Visitation."

Sweikata's original petition for custody was adjudicated by Judge Bramlage who presides over the Second Division of Boone Family Court. The Entry of Appearance and Verified Motion for Visitation bore the same civil action number (No. 18-CI-00255), but Sweikata's new attorney inexplicably captioned her filings for the Fourth Division of Boone Family Court where recently-elected

Judge Dusing now presides, and not where the case originated.[6] Irrespective of which division proceeded thereafter, the entry of appearance and motion were filed in a case that was final. Neither division of the Boone Family Court retained jurisdiction of that case when the motion was filed.

To slightly paraphrase the Supreme Court, "Under [CR] 59, a final judgment or order may be vacated only in accordance with the ten day provisions of the rule. . . . Thereafter, the trial court loses jurisdiction to act. . . . [Sweikata], after such an act, could not merely redocket the old case as the trial court had lost jurisdiction . . . ." *Kelly v. Commonwealth*, 554 S.W.3d 854, 858 (Ky. 2018) (citations and internal quotation marks omitted). Everything done in this case after April 2018 was for naught because it was done after the family court lost jurisdiction. The order entered a year later, on April 22, 2019, is void.

> In the case now before this Court, as in *Mathews v. Mathews*,
>
> the fact which renders the judgment void, "namely, the lack of jurisdiction in the court to render [it], appears on the face of the record." *Commonwealth v. Jefferson County*, 300 Ky. 514, 189 S.W.2d 604, 606 (1945). Such a judgment, unlike one which is merely erroneous or voidable, is not entitled to any respect or deference by the courts of the Commonwealth but instead is "open to attack anytime and any place." *Grubb v. Wurtland Water District*, Ky., 384 S.W.2d 321 (1964).

731 S.W.2d 832, 833 (Ky. App. 1987).

---

[6] This Court could find no explanation in the record for shifting the case to the Fourth Division.

"Once lost, jurisdiction must be invoked anew, independently of the previous action that has achieved finality." *Pavkovich v. Shenouda*, 280 S.W.3d 584, 588 (Ky. App. 2009). If Sweikata wanted to pursue a different claim of right – a claim for visitation – he should have done so by an independent action.

This Court lacks subject matter jurisdiction to review void family or circuit court orders. *Commonwealth Health Corp. v. Croslin*, 920 S.W.2d 46, 48 (Ky. 1996) (Where "trial court order . . . is void" it is within appellate court's "inherent power to . . . order this case dismissed, *sua sponte*, for lack of subject matter jurisdiction."); *see also* KY. CONST. 111(2).

## CONCLUSION

Because the Boone Family Court lacked jurisdiction to entertain Sweikata's motion for visitation, the order denying the motion was void. This Court has no jurisdiction to review the merits of an appeal from a void order. The Court, therefore, ORDERS this appeal DISMISSED.

Judd's motion for sanctions against Sweikata for failing to file a brief in a timely fashion is DENIED AS MOOT.

ALL CONCUR.

ENTERED: Sept. 11, 2020 _____
JUDGE, COURT OF APPEALS

-9-

BRIEFS FOR APPELLANT:

Jennifer Scholl Overmann
Edgewood, Kentucky

BRIEF FOR APPELLEE:

Donald Nageleisen
Fort Mitchell, Kentucky