RENDERED: APRIL 28, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0092-MR
AND
NO. 2022-CA-0197-MR

ALIXANDRIA D. SHARPE                                         APPELLANT

APPEALS FROM JEFFERSON FAMILY COURT
v.          HONORABLE TARA HAGERTY, JUDGE
ACTION NO. 19-CI-502309

FELIX H. SHARPE, II                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND TAYLOR, JUDGES.

LAMBERT, JUDGE: This is a dissolution action in which Alixandria D. Sharpe

has appealed from three orders of the Jefferson Family Court related to the award

of child support and maintenance, including the family court's finding that she was

underemployed and the amount of income it imputed to her. We affirm.

Alixandria and Felix H. Sharpe II were married on August 10, 2012, in Michigan. Three children were born of the marriage; one son in 2016, and twins (a son and a daughter) in 2019. The parties separated on December 16, 2018, and Felix filed a petition to dissolve the marriage on July 30, 2019. He requested that the court grant them joint custody of the children, order him to pay child support, and equitably divide the marital property and debts after assigning the non-marital property. Felix, who is an attorney, filed the petition *pro se*, after which he retained an attorney to represent him. In his preliminary verified disclosure statement, Felix listed his gross monthly income as $10,833.33 and Alixandria's as $600.00. He paid the children's insurance premiums of $1,078.00 per month. Felix also listed their automobiles, checking accounts, and retirement accounts. He listed a marital debt of $1,962.88 to Champion Farms, an apartment where they had lived prior to the separation. Felix's student loan was listed as non-marital. We note that both Felix and Alixandria have a child born prior to the marriage from previous relationships.

On February 16, 2021, Felix filed a motion for a default judgment and a decree of dissolution. In support of his motion, Felix filed a written deposition in which he stated that Alixandria was voluntarily unemployed. She had a Bachelor of Arts degree and was able to work as a schoolteacher earning about $40,000.00 per year. He again requested joint custody of the children with an equal parenting

-2-

schedule. He included the other statutory information to support his petition to dissolve the marriage and noted that Alixandria was in default as she had not filed a response, despite having been served by the sheriff on October 4, 2019. In his tendered decree, Felix stated that Alixandria was capable of earning $40,000.00 per year based upon her education and skillset and that he should pay her $1,460.27 per month in child support based upon the statutory guidelines. Shortly thereafter, counsel entered an appearance on behalf of Alixandria.

On May 6, 2021, Alixandria filed her preliminary verified disclosure statement. For her income, she listed $691.42 in child support, which she received for her older son born prior to the marriage. She stated the Champion Farms debt was now $2,235.00 and that she also had a student loan debt. Her monthly expenses totaled $4,157.00. The following month, Alixandria filed a motion for the court to enter a financial status quo order. In an attached affidavit, Alixandria stated that her older child as well as the three children she had with Felix lived primarily with her. By agreement, Felix had been paying for her rent ($1,625.00 per month), groceries ($400.00 every two weeks), car insurance for the van used to transport the children, the utility bills for the residence ($214.00 per month), internet ($43.00 per month), and her cell phone bill ($10.00 to $25.00 per month). Felix had recently stopped paying the internet bill. Alixandria and the children were all on Felix's health and dental insurance plans. Her only independent

-3-

income was child support she received for her oldest son. She needed to take additional courses or be retrained so that she could be certified as an art teacher. The court entered a status quo order and ordered that the parties would continue to share temporary joint custody of the children with Felix continuing to pay for household expenses as he had during the separation. On July 16, 2021, the court entered a limited decree dissolving the marriage.

Felix filed his final verified disclosure statement on September 30, 2021. His gross monthly income was $11,500.00, and he paid $1,624.00 for the children's insurance. There were three automobiles, two of which had no debt owed and one, for which he was the primary driver, had a debt of $20,468.00. Felix was claiming that car as his non-marital property. He again listed bank and retirement accounts. His student loan balance was $64,817.00, on which he paid $500.00 per month, and Alixandria's student loan balance was $87,197.00.

Alixandria filed her final verified disclosure shortly thereafter. She listed her income as $691.42. She worked for Portland Christian School and was paid via tuition credit. She stated she was paying $5.00 per month for her student loan.

In his pre-trial compliance, Felix requested that the court take into account their 50/50 shared parenting schedule when calculating child support. He also requested that the court impute an income to Alixandria at a minimum of

$15.00 per hour for full-time work ($1,733.33 per month). He stated that she currently earned $10.00 per hour for part-time work. He believed she was capable of earning at least $15.00 per hour. The only remaining debts were non-marital student loans. If maintenance were to be granted to Alixandria, Felix requested that the duration be limited, taking into account the support he had been providing since their separation three years ago. In an amended disclosure, Felix indicated that he was currently paying $824.00 per month for the children's insurance; that amount would decrease to $428.00 per month when he was able to amend his coverage.

On October 3, 2021, Felix filed a motion to hold Alixandria in contempt related to her failure to abide by their temporary parenting schedule. He believed she was acting intentionally and in retaliation for his filing the dissolution action and, therefore, requested legal expenses related to filing the motion.

Alixandria filed her trial memorandum on October 4, 2021. She indicated that she was earning $10.00 per hour for her part-time work at Portland Christian School but that these earnings went to defraying the cost of tuition for their oldest child. As to the student loans, she stated that they had agreed during the marriage that they would live frugally to first reduce Felix's debt, and then they would do the same with hers. She requested that Felix be ordered to pay the interest that had accrued during the marriage, which totaled $12,472.25 from 2012

to 2020. She also stated that during the marriage, she and Felix had agreed that she would stay home to take care of the children while they were young. She planned to enroll in a master's art therapy program at the University of Louisville in the Fall of 2020, from which she would graduate in 2024. Therefore, she requested maintenance for three years. Due to the disparity in their incomes, she requested an award of attorney's fees and costs. To date, she had incurred $2,800.00 in attorney's fees and a mediator's fee of $475.00.

A trial was held for October 7, 2021. The parties presented their joint stipulations prior to the taking of testimony, including that they would share joint custody of the three children with equal parenting time on a week-on/week-off basis, the parenting schedule, the holiday and vacation schedule, and that Felix's 2011 Toyota Highlander was his separate non-marital property. Felix and Alixandria both testified regarding the remaining contested issues, including maintenance and child support.

The parties both filed post-trial memoranda. In his memorandum, Felix indicated that the issues before the court were maintenance, child support, tax dependency claims, the division of marital property, attorney's fees, and his motion to hold Alixandria in contempt. The court had ruled at the conclusion of the trial that he would not have to pay any amount toward Alixandria's student loans. Felix argued that Alixandria was not entitled to maintenance, noting that

she had failed to prove that she was unable to support herself through appropriate employment. In addition, she had been awarded a vehicle worth $12,000.00 and would be receiving an equitable share of his retirement accounts. If maintenance were to be granted, he requested that it be temporary. As to child support, Felix requested that the court impute a higher income to Alixandria based on her level of education and the current job market.

In her memorandum, Alixandria pointed out that she had been a homemaker during the nine-year marriage by mutual agreement. She believed Felix's argument that she should have been able to obtain gainful employment during the separation ignored that she was caring for three young children during the pandemic, when it was not easy to find childcare. Alixandria sought $1,250.00 per month in rehabilitative maintenance for three years. This would allow her to continue her education to obtain a degree in art therapy by 2024. She disagreed that the court should impute income to her of more than $10.00 per hour with respect to the child support calculation. She was taking two classes that would require 30 hours per week of her time, and she was working part-time (six to seven hours per week) earning $10.00 per hour. Her work paid for their oldest child's preschool and aftercare fees. Finally, she requested attorney's fees and costs.

The court entered an order on December 22, 2021, in which it addressed the disputed issues. As far as marital property, the court ordered Felix's

two retirement accounts to be equitably distributed. One account had a balance of $65,524.00 (less Felix's agreed non-marital claim of $15,324.00) at the time he filed his disclosure, and the other had a balance of $31,797.23 at the date of dissolution. The court awarded Alixandria the 2014 Dodge Caravan, which had an assessed value of $10,863.00. For purposes of maintenance and child support calculations, the court imputed an income of $15.00 per hour for full-time work to Alixandria. The court did not find it credible that she could not work while pursuing her master's degree. The court found that maintenance was appropriate based upon Alixandria's role as the primary caregiver for their children, lack of work outside of the home, and Felix's substantially higher income. It opted to award her $1,250.00 per month for 18 months rather than the three years that she had requested. As to child support, the court found Felix's obligation to Alixandria was $718.00 per month based upon his gross monthly salary of $11,500.00 and her gross monthly income of $2,600.00 (imputing income to her of $15.00 per hour for full-time employment). This was based upon their 50/50 shared parenting schedule, including Felix's payment of $1,577.40 per month for the children's insurance and day care expenses. The court ordered Felix to pay $2,800.00 in attorney's fees pursuant to Kentucky Revised Statutes (KRS) 403.220 due to the large discrepancy in their incomes. The court then found Alixandria in contempt

for willfully disobeying the parenting schedule. As a result, the court denied her motion for Felix to pay the mediation fee.

On January 12, 2022, Alixandria moved the court to order the parties to participate in a mediation conference related to child support as Felix had new employment, among other issues. In an attached affidavit, Alixandria stated that she was requesting modification of Felix's child support obligation based upon his new employment; she requested income records as well as documentation of the children's portion of the insurance premium. In response, Felix confirmed that he had recently obtained new employment with a base salary of $160,000.00 per year. He also received a sign-on bonus of $8,000.00. He did not believe mediation was necessary as the court could recalculate child support based on his new salary as well as Alixandria's imputed income of $15.00 per hour and the $1,250.00 per month in maintenance that she received. Felix included a Craig Ross child support report establishing that his child support obligation was $421.00 per month, which took into account the $2,154.00 he paid each month in childcare and insurance.

Alixandria filed a notice of appeal from the December 22, 2021, order on January 20, 2022 (Appeal No. 2022-CA-0092-MR). Shortly thereafter, Felix's counsel withdrew her representation with the note that he would proceed *pro se*.

On February 8, 2022, the court entered an order ruling on Alixandria's motion. It addressed the various issues and denied her motion to mediate. As to child support, the court ruled as follows:

> The Court has received and reviewed Felix's proof of current income ($160,000.00 base salary), including the bonus ($8,000.00); considered the income previously imputed to Alixandria ($31,200.00 annual salary); considered the monthly maintenance Felix is paying Alixandria for eighteen months ($1250.00); considered Felix's monthly day care and health care expenses for the parties' children [$2,150.00]; and considered the continued 50/50 parenting schedule. Based on the aforementioned figures, the Court hereby modifies Felix's monthly child support obligation to $498.00, effective upon entry of this Order.

In a footnote, the court stated that in the December order, it had erroneously failed to include the $1,250.00 in maintenance Alixandria received as gross income for her. Once that obligation expired, it would entertain a motion to modify Felix's child support obligation.

Alixandria moved to vacate the February 8, 2022, order pursuant to Kentucky Rules of Civil Procedure (CR) 59.05 due to the filing of her notice of appeal. In response, Felix stated that under Kentucky law, the family court maintained concurrent jurisdiction with the appellate court while an appeal was pending for issues of custody and child support, citing *Johnson v. Commonwealth*, 17 S.W.3d 109, 113 (Ky. 2020). Because the issues before the court in

Alixandria's motion dealt with custody and child support, the motion to vacate should be denied.

The court entered an order on February 21, 2022. It first summarized the proceedings at the February 14, 2022, motion hour, indicating that Alixandria, through counsel, moved to withdraw her motion to vacate, stating that it had been filed in error. The court stated that it retained jurisdiction to rule on child support issues and therefore denied her motion to vacate for that reason. Her counsel then orally moved the court to amend a portion of the February 8th order related to tax exemptions and requested additional information as to how it had calculated Felix's child support obligation. It granted her oral motion as to the tax exemptions. And it granted the motion to clarify how it calculated child support. After reciting the amounts it had considered in the February 8th order, the court stated that it had input the figures into the Craig Ross program, which resulted in a modification of Felix's monthly child support obligation to $498.00 per month. It included the Craig Ross child support report upon which it based that amount. The report recited that Felix paid $2,150.00 per month in childcare and insurance for the children. Alixandria did not pay any of those expenses. Alixandria filed her second notice of appeal from the February 8 and February 21, 2022, orders on February 22, 2022 (an amended version was filed the next day) (Appeal No. 2022-CA-0197-MR).

On appeal, Alixandria contends that the family court erred in imputing income to her for purposes of maintenance and the calculation of child support. She also argues that the court erred in relying upon the Craig Ross program when it calculated Felix's child support obligation.

CR 52.01 provides the general framework for the family court as well as review in the Court of Appeals:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.] . . . Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

*See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (footnote omitted) (An appellate court may set aside a lower court's findings made pursuant to CR 52.01 "only if those findings are clearly erroneous"). The *Asente* Court went on to address substantial evidence:

> "[S]ubstantial evidence" is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, "[m]ere doubt

-12-

as to the correctness of [a] finding [will] not justify [its] reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Id.* (footnotes omitted).

We shall first address Alixandria's argument related to child support. Our standard of review of child support obligations is set forth in *C.D.G. v. N.J.S.*, 469 S.W.3d 413, 418 (Ky. 2015):

As the courts of this Commonwealth have repeatedly stated, trial courts have broad discretion in determining child-support matters. *See Artrip v. Noe*, 311 S.W.3d 229, 232 (Ky. 2010) ("The trial court is vested with broad discretion in the establishment, enforcement, and modification of child support."); *Van Meter v. Smith*, 14 S.W.3d 569, 574 (Ky. App. 2000) ("[T]his state's domestic relations law is founded upon general statutory guidelines and presumptions within which the trial court has considerable discretion. The trial court has discretion in many instances, moreover, to deviate from the statutory parameters, but only if it makes findings clearly justifying the deviation."). "[T]hat discretion extends, pursuant to KRS 403.211(2)-(4), to deviations from guidelines-determined child support amounts." *Commonwealth, Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324, 329 (Ky. 2011).

"The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *C.D.G.*, 469 S.W.3d. at 421 (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

-13-

KRS 403.211 addresses child support and provides courts with an option to deviate from the guidelines set forth in KRS 403.212 (or KRS 403.2121) under certain circumstances:

> (2) At the time of initial establishment of a child support order, whether temporary or permanent, or in any proceeding to modify a support order, the child support guidelines in KRS 403.212 [or KRS 403.2121] shall serve as a rebuttable presumption for the establishment or modification of the amount of child support. Courts may deviate from the guidelines where their application would be unjust or inappropriate. Any deviation shall be accompanied by a written finding or specific finding on the record by the court, specifying the reason for the deviation.
>
> (3) A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption and allow for an appropriate adjustment of the guideline award if based upon one (1) or more of the following criteria:
>
>> (a) A child's extraordinary medical or dental needs;
>>
>> (b) A child's extraordinary educational, job training, or special needs;
>>
>> (c) Either parent's own extraordinary needs, such as medical expenses;
>>
>> (d) The independent financial resources, if any, of the child or children;
>>
>> (e) Combined monthly adjusted parental gross income in excess of the Kentucky child support guidelines;

> (f) The parents of the child, having demonstrated knowledge of the amount of child support established by the Kentucky child support guidelines, have agreed to child support different from the guideline amount.  However, no such agreement shall be the basis of any deviation if public assistance is being paid on behalf of a child under the provisions of Part D of Title IV of the Federal Social Security Act; and
>
> (g) Any similar factor of an extraordinary nature specifically identified by the court which would make application of the guidelines inappropriate.

(Footnote omitted.)  This version was effective between June 29, 2021, and July 13, 2022; the current version includes the additional mention of KRS 403.2121, which appears in brackets above.[1]

In *Plattner v. Plattner*, 228 S.W.3d 577, 579-80 (Ky. App. 2007), this Court discussed the flexibility of the child support guidelines:

---

[1] The version of KRS 403.2121(1) effective until March 31, 2023, provides, in relevant part:

> Except as provided in subsection (4) of this section or otherwise provided in this chapter, the child support obligation determined under KRS 403.212 shall be subject to further adjustment as follows:
>
> > (a) If the parents share equal parenting time, the child support obligation determined under KRS 403.212 shall be divided between the parents in proportion to their combined monthly adjusted parental gross income, and the parent with the greater proportional child support obligation shall pay the parent with the lesser proportional obligation the difference in the value of each parent's proportional obligation[.]

While Kentucky's child support guidelines do not contemplate such a shared custody arrangement, they do reflect the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes. They also provide a measure of flexibility that is particularly relevant in this case. Under the provisions of KRS 403.211(2) and (3), a trial court may deviate from the child support guidelines when it finds that their application would be unjust or inappropriate. The period of time during which the children reside with each parent may be considered in determining child support, and a relatively equal division of physical custody may constitute valid grounds for deviating from the guidelines. *Brown v. Brown*, Ky. App. 952 S.W.2d 707 (Ky. App. 1997); *Downey v. Rogers*, 847 S.W.2d 63 (Ky. App. 1993).

In *Downey v. Rogers*, 847 S.W.2d 63 (Ky. App. 1993), we declined to conclude that a trial court had abused its discretion by awarding child support where the parties shared **legal** custody and shared equal or almost equal **physical** custody of their children. However, our conclusion was based, in part, upon the fact that the children's father **had agreed** to pay a portion of his child support obligation to the children's mother. We also noted that the children's father earned twice as much annually as did their mother; thus, her share of the children's expenses was proportionately more cumbersome.

The evidence as described in Plattner's brief is notably different and distinguishable and does not support the conclusion that his child support obligation as reflected in the guidelines should be paid to Levoir. The parties were awarded joint custody of the children, and neither of them was designated as the primary residential custodian. Because physical custody of the children is evenly divided between the parents, they bear an almost identical responsibility for the day-to-day expenses associated with their care. And since there is no

-16-

significant disparity between the parties' annual income, the expenses necessary to provide a home for the children (even when they are not in residence) are also incurred by each party in equal proportion.

The statutory guidelines offer sufficient flexibility to allow the trial court to fashion appropriate and just child support orders. Under the unique circumstances of this case, we conclude that the trial court erred by awarding child support to Levoir.

In the present case, the family court opted to impute income to Alixandria for purposes of computing Felix's child support obligation. KRS 403.212(3)(e)[2] permits a trial court to impute income to a parent under the following circumstances:

1. If there is a finding that a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, except that a finding of voluntary unemployment or underemployment and a determination of potential income shall not be made for a parent who is incarcerated, physically or mentally incapacitated, or is caring for a very young child, age three (3) or younger, for whom the parents owe a joint legal responsibility;

2. A court may find a parent is voluntarily unemployed or underemployed without finding that the parent intended to avoid or reduce the child support obligation; and

3. Imputation of potential income, when applicable, shall include consideration of the following circumstances of the parents, to the extent known:

[2] The prior version, which was effective from June 29, 2021, until the present version became effective on July 14, 2022, contains the same language; only the numbering of the subsection was changed.

-17-

a. Assets and residence;

b. Employment, earning history, and job skills;

c. Educational level, literacy, age, health, and criminal record that could impair the ability to gain or continue employment;

d. Record of seeking work;

e. Local labor market, including availability of employment for which the parent may be qualified and employable;

f. Prevailing earnings in the local labor market; and

g. Other relevant background factors, including employment barriers[.]

Alixandria cites this Court to *Lambert v. Lambert*, 475 S.W.3d 646 (Ky. App. 2015), in which this Court reversed the imputation of income to the mother for purposes of child support because she was caring for her two youngest children, who were under the age of three.

> Child support determinations are based on the combined gross income of both parents. In calculating child support obligations, income may only be imputed to parents when the parent is voluntarily unemployed or underemployed, and such a calculation is to be based upon the parent's potential income. KRS 403.212(2)(d); *Howard v. Howard*, 336 S.W.3d 433, 439 (Ky. 2011).

> If a parent is voluntarily unemployed or underemployed, child support shall be

> calculated based on a determination of potential income, except that **a determination of potential income shall not be made for a parent who** is physically or mentally incapacitated or **is caring for a very young child, age three (3) or younger**, for whom the parents owe a joint legal responsibility."
>
> KRS 403.212(2)(d) (emphasis added). Janessa is currently caring for her two youngest children, both of whom are under the age of three. We therefore find that the circuit court abused its discretion by imputing minimum wage to Janessa. On remand, the circuit court must note Janessa's income as zero and order the minimum $60 monthly child support obligation.

*Lambert*, 475 S.W.3d at 653-54 (footnote omitted).

We agree with Felix that the facts in *Lambert* are different from the present case as the mother in *Lambert* was caring for two children under the age of three who were not involved in the custody action. Here, that is not the case. The children under the age of three are the subject of the custody order, and the parties have joint custody of them with 50/50 parenting time. The mother has another child, but he is older than the age of three. In addition, Alixandria is able to work, and she was in fact working at a preschool for tuition credit. The twins were in daycare during the week while she worked, and she would be taking classes. Alixandria is well-educated, with a bachelor's degree, and she was planning to seek a master's degree. And, as Felix pointed out, Alixandria admitted in her trial memorandum that she should be imputed an income of $10.00 per hour.

-19-

Therefore, we hold that the exception related to raising a very young child does not apply here. We find no abuse of discretion in the family court's decision to impute an income to Alixandria of $15.00 per hour for full-time employment.

Alixandria also disputes the family court's decision to use the Craig Ross program to calculate child support, arguing that the algorithm used by the program is at odds with KRS 403.212, specifically citing the enhanced multiplier the program uses. We find no reason to question the family court's use of the Craig Ross program to calculate child support in this instance, especially as it takes into account how much time each parent has with the children as contemplated in KRS 403.2121. We also find no abuse of discretion in the family court's calculation of child support. As we stated in *Plattner*, *supra*, "[w]ithin statutory parameters, the establishment, modification, and enforcement of child support obligations are left to the sound discretion of the trial court. However, this discretion is not unlimited. It must be fair, reasonable, and supported by sound legal principles." *Plattner*, 228 S.W.3d at 579 (citations omitted). The evidence established that the parties share equal parenting time of the children, Felix pays $2,150.00 per month in childcare and insurance for the children, and Alixandria receives $1,250.00 per month in maintenance. While there is a large discrepancy in their respective incomes, the amount of child support awarded is overall a fair

amount, and the court noted that the amount could be modified once Alixandria's maintenance payments ended.

Next, Alixandria argues that the family court erred in calculating her maintenance award when it deemed her to be underemployed. KRS 403.200 addresses when a maintenance award is appropriate and the relevant factors for a court to consider:

> (1) In a proceeding for dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of a marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
>
> > (a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and
> >
> > (b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.
>
> (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:
>
> > (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support

of a child living with the party includes a
sum for that party as custodian;

(b) The time necessary to acquire sufficient
education or training to enable the party
seeking maintenance to find appropriate
employment;

(c) The standard of living established during
the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional
condition of the spouse seeking
maintenance; and

(f) The ability of the spouse from whom
maintenance is sought to meet his needs
while meeting those of the spouse seeking
maintenance.

"This is a matter that comes within the discretion of the trial court." *Browning v.
Browning*, 551 S.W.2d 823, 825 (Ky. App. 1977).

Alixandria argues that unlike the child support statute, KRS 403.200
does not include a provision that permits the imputation of income to a spouse who
is voluntarily unemployed or underemployed. This Court rejected that argument in
*McGregor v. McGregor*, 334 S.W.3d 113, 117 (Ky. App. 2011), and we find no
reason to disagree with this holding:

In contrast, the maintenance statute, KRS 403.200,
does not explicitly include a similar provision permitting
a court to impute income to a voluntarily unemployed or
underemployed spouse. In determining if a spouse is

-22-

entitled to maintenance, a trial court must find, among other things, that the spouse seeking maintenance "[i]s unable to support [herself] through appropriate employment . . . ." KRS 403.200(1)(b). To set the appropriate amount and duration of maintenance under KRS 403.200(2), the court must consider several factors, including a spouse's financial resources, ability to find appropriate employment, and the standard of living enjoyed during the marriage. While a case of first impression, it is implicit in this statutory language that a court may impute income to a voluntarily unemployed or underemployed spouse to determine both the spouse's entitlement to maintenance and the amount and duration of maintenance. This practice has found favor in other jurisdictions throughout the United States when a trial court has imputed income to an underemployed or unemployed spouse. *See*, *Evans v. Evans*, 45 S.W.3d 523 (Mo. App. 2001) (imputing income to a spouse requesting maintenance); *Stirewalt v. Stirewalt*, 307 S.W.3d 701 (Mo. App. 2010) (imputing income to a spouse required to pay maintenance); *LeRoy v. LeRoy*, 600 N.W.2d 729 (Minn. App. 1999) (a court may consider past earnings and earning capacity to estimate future income in determining ability to pay maintenance); *Steinberg v. Steinberg*, 59 A.D.3d 702, 874 N.Y.S.2d 230 (N.Y. 2009) (may impute income based upon a party's past income or demonstrated future potential earnings).

Because the family court awarded her the amount of monthly maintenance she had requested ($1,250.00), Alixandria's actual dispute is with the duration of maintenance she was awarded. She had requested three years of maintenance during the time it would take for her to finish her master's degree program; instead, the court awarded her maintenance for 18 months. The court considered the relevant factors, including the duration of the marriage and the time

-23-

it would take her to finish her education.  The court did not find it credible that Alixandria would not be able to work more than she currently was (part-time for tuition credit) while she pursued her master's degree, noting the current job market and that she was "a personable and well-spoken person with a college degree."  We find no abuse of discretion in either the amount or the duration of maintenance awarded in this case.

For the foregoing reasons, the orders of the Jefferson Family Court are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

J. Gregory Troutman
Wm. Dennis Sims
Louisville, Kentucky

BRIEF FOR APPELLEE:

Felix H. Sharpe, II, *pro se*
Louisville, Kentucky